**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark H. Goldberg and Sherry R. Goldberg, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> Pacific Indemnity Company, et al., <br><br> Defendants. | No. CV 05-2670-PHX-JAT <br><br> **ORDER** |

Currently before the Court is a Motion for Attorneys' Fees and Related Non-Taxable Expenses Including an Award of Sanctions Pursuant to Rule 68 of Arizona Rules of Civil Procedure ("Motion") (Dkt. #783) filed by Defendants Pacific Indemnity Company and Federal Insurance Company (collectively "Defendants"). Plaintiffs Mark H. Goldberg, Sherry R. Goldberg, and the MH & SR Goldberg Family Trust (collectively "Plaintiffs") filed a Response (Dkt. #843), and Defendants filed a Reply (Dkt. #844). Determining oral argument unnecessary, the Court now issues the following Order.[1]

---

[1] Though oral argument was requested on the Motion, because both the parties submitted memoranda discussing the law and evidence in support of their positions and oral argument would not have aided the Court's decisional process, the Court will not set oral argument. *See e.g., Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *Lake at Las Vegas Investors Group, Inc. v. Pacific. Dev. Malibu Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

## I. BACKGROUND

On or about July 29, 2005, Plaintiffs initiated the instant action alleging claims for breach of contract and bad faith. The Court granted summary judgment in favor of Defendants on Plaintiffs' bad-faith and punitive damage claims on February 21, 2008. (Dkt. #625.) The Court's Order further granted summary judgment in favor of Defendants on Plaintiffs' stigma damages issue relating to the breach of contract claim. (*Id.*) The case proceeded to trial in August 2008 on Plaintiffs' remaining breach of contract claim. Following a four-week trial, the jury returned a verdict in favor of Defendants on the remaining claim, and the Court entered Judgment accordingly on September 24, 2008. (Dkt. #779.) Defendants filed their timely Motion on October 8, 2008. (Dkt. #783.)

## II. ATTORNEY'S FEES

Generally, state statutes allowing for the recovery of attorney's fees are substantive for *Erie* purposes. "In an action where a district court is exercising its subject matter jurisdiction over a state law claim, so long as 'state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.'" *MRO Communications, Inc. v. AT & T Corp.*, 197 F.3d 1276, 1281 (9th Cir. 1999) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975) (quoting 6 *Moore's Federal Practice* § 54.77[2] (2d ed.1974))). Accordingly, the Court will apply state law to Defendants' request for attorneys' fees.

### A. Award of Attorney's Fees under Arizona Law

A.R.S. § 12-341.01 provides, in pertinent part: "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." A.R.S. § 12-341.01(A). "[A]n action alleging insurer's bad faith is one "arising out of contract" within the meaning of s 12-341.01(A)." *Sparks v. Republic National Ins. Co.*, 647 P.2d 1127, 1141-42 (Ariz. 1982).

Defendants prevailed on the breach of contract and bad faith claims. Therefore, the Court, in its discretion, may award Defendants their reasonable attorney's fees. *See* A.R.S. §

- 2 -

12-341.01(A); *Assoc. Indem. Corp. v. Warner*, 694 P.2d 1181, 1183 (Ariz. 1985) (A.R.S. § 12-341.01 vests discretion on trial court to award reasonable attorney's fees to a successful contract litigant).

Courts should consider six factors in determining whether to make a discretionary fees award under Arizona law. *See Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1405-06 (9th Cir. 1996) (applying Arizona law).

> The Arizona Supreme Court has outlined six factors which courts should use in determining whether to grant attorneys' fees and costs. Those factors are (1) whether the unsuccessful party's claims or defenses were meritorious; (2) whether the litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving that result; (3) whether assessing fees against the unsuccessful party would cause an extreme hardship; (4) whether the successful party prevailed with respect to all the relief sought; (5) whether the legal question was novel and whether such claim or defense has previously been adjudicated in this jurisdiction; and (6) whether the award would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorneys' fees.

*Id.* (citing *Assoc. Indem.*, 694 P.2d at 1184). "The weight given to any one factor is within the Court's discretion." *Moedt v. Gen. Motors Corp.*, 60 P.3d 240, 246 (Ariz. App. 2000).

**1. Merits of the claim**

The Court notes that "[a] claim can have merit, even if it does not succeed." *Scottsdale Mem'l Health Sys., Inc. v. Clark*, 791 P.2d 1094, 1099 (Ariz. App. 1990). Here, this Court granted summary judgment in favor of Defendants on Plaintiffs' bad faith claim and the stigma damages portion of Plaintiffs' breach of contract claim. (Dkt. #625.) In granting summary judgment, the Court found that "no reasonable juror could find that Federal *knowingly* acted in an unreasonable manner. (*Id.* at 15.) (emphasis in original). This Court went on to state: "Plaintiffs obviously disagree with the ultimate conclusion of Federal's investigation. But Plaintiffs' disappointment with Federal's refusal to raze and rebuild their home does not mean that Federal acted unreasonably in adjusting the claim or in its ultimate refusal to comply with the raze and rebuild demand." (*Id.*) Further, in reference to the stigma damages issue, this Court found that "[t]he plain language of the

provision in question and the remainder of the Policy clearly limit coverage to physical loss to the home. . . . Purely economic loss, like stigma damages, does not fall under the meaning of 'physical loss.'" (*Id.* at 19.) Accordingly, the Court finds that Plaintiffs' stigma damages and bad faith claims were not meritorious.

However, this matter did proceed to trial on Plaintiffs' breach of contract claim. While both parties continue to dispute the cause of the odors in the El Maro residence, neither party disputes that odors did in fact exist at some point. The mere fact that the jury disagreed with their raze/rebuild contract position does not mean that Plaintiffs' breach of contract claim did not have merit. *See Clark*, 791 P.2d at 1099. As such, the Court finds that Plaintiffs' breach of contract claim had merit.

Balancing the fact that Plaintiffs' breach of contract claim was meritorious, while their stigma damages and bad faith claims were not, the Court finds that the first *Associated Indemnity* factor marginally favors Plaintiffs.

**2. Settlement**

Defendants contend that this case should have settled without going to trial, and that "[b]ut for the Plaintiffs' unrelenting and singular insistence that the El Maro residence had to be razed to the dirt and rebuilt in its entirety, this matter could have been and should have been resolved years ago." (Motion at 1.) Plaintiffs counter that settlement efforts were "scuttled" by Defendants in the last stages of finalizing an acceptable settlement agreement. (Response at 3.) Specifically, Plaintiffs argue that Defendants interjected unreasonable demands into the settlement negotiations, and after rejecting Plaintiffs' June 6, 2007 settlement proposal, Defendants did not present a counter offer and effectively ended settlement negotiations by service of a $1.25 million Offer of Judgment. (*Id.* at 4.)

However, Defendants did in fact serve Plaintiffs with an Offer of Judgment in July 2007. Plaintiffs contend that the July 2007 offer was "unreasonably low" and "would not have even covered [Plaintiffs] attorneys' fees and expert expenses incurred in this action as of July 2007." (*Id.* at 3) Although Defendants' offer of judgment appeared unreasonably low to Plaintiffs at the time, in hindsight, Defendants were economically justified in offering

- 4 -

to settle this matter for that amount. Had Plaintiffs accepted Defendants' Offer of Judgment, this matter could have avoided trial. Moreover, Plaintiffs had other opportunities to settle, for instance, by accepting Defendants offer to purchase the El Maro residence at a reasonable price. As such, the Court finds that the second *Associated Indemnity* factor favors Defendants.

**3. Extreme hardship**

"[A]lthough the party requesting fees has the burden of proving his entitlement to an award of fees, the party asserting financial hardship has the burden of coming forward with *prima facie* evidence of financial hardship." *Woerth v. City of Flagstaff*, 808 P.2d 297, 305 (Ariz. App. 1990) (citing *Southwest Cotton Company v. Ryan*, 199 P. 124, 129 (1921)). Unsworn and unproven assertions are not facts admissible in evidence; Plaintiffs are required to present specific facts by affidavit or testimony. *See id.* Here, Plaintiffs merely assert that they are in their sixties and "would have limited time to recoup a financial hit of the magnitude requested by Defendants." (Response at 8.) That, however, is not the same as saying that an award would cause extreme hardship; Plaintiffs merely assert that they would have trouble making the money back, rather than that they would suffer financial hardship by being required to pay such an award. Accordingly, the Court finds that Plaintiffs fail to present specific facts to determine whether an award of attorney's fees in this case would constitute extreme hardship.

However, Plaintiffs point to the fact that they have already "suffered the extreme financial and sentimental loss of their dream home," and that their "catastrophic property loss should not be compounded by an award of attorneys' fees . . . ." (Response at 6.) Plaintiffs cite to *Scottsdale Mem'l Health Sys., Inc. v. Clark*, 791 P.2d 1094 (Ariz. App. 1990), for the proposition that the Court may consider an inequitable result an extreme hardship despite lacking knowledge of the financial condition of either the plaintiff or defendant.[2] *Id.* at 1100.

---

[2]The Court notes that while it may not know the exact net worth of Plaintiffs, the Court does know that Plaintiffs, at one time at least, could afford to purchase a multi-million

- 5 -

In *Clark*, the trial court declared the defendant's mechanic's lien, in the amount of $181,736.17, forfeit. In considering the plaintiff's request for fees, the trial court found that the plaintiff had prevailed due to the defendant's "failure to comply with a statutory provision which, until the supreme court decision, was unclear in its application." *Clark*, 791 P.2d at 1100. The trial court further held that "the outcome of the case [was] harsh as to Defendant and represents something of a windfall to Plaintiff . . . ." *Id.* at 1097-98. In affirming, the Court of Appeals held that, under the circumstances, it was not unreasonable for the trial court to conclude that imposing attorney's fees, on top of denying the defendant the right to enforce its lien, would impose a substantial hardship. *Id.* at 1100.

Here, Defendants were not responsible for the damage to the El Maro residence and are not the recipients of a substantial windfall. Moreover, while the amount of attorneys' fees is quite large, Plaintiffs have not shown an inability to pay. While the Court is not unsympathetic to Plaintiffs' loss,[3] the Court cannot find that an imposition of fees in this case would create an inequitable result merely because Plaintiffs did not prevail on the merits. As such, the Court finds that Plaintiffs fail to establish that an award of attorney's fees would cause extreme hardship. The third *Associated Indemnity* favor favors Defendants.

**4. Successful party prevails with respect to all relief sought**

The parties do not dispute that Defendants prevailed against all of Plaintiffs' claims. The Court therefore finds that this factor strongly favors Defendants.

**5. Novel legal question**

Plaintiffs contend that "in all their research for the myriad of issues and motion practice in this case they have never come upon a case of urine odor permeation that resulted

dollar home.

---

[3]The Court is also unclear as to the extent of the loss suffered by Plaintiffs. While the El Maro residence was damaged by the alleged urine contamination in the home, Plaintiffs received a state court settlement from the contractors responsible for the damages. Though the settlement may not have been enough to fully compensate Plaintiffs for the damage to their home, at the least, it would offset some of the loss claimed by Plaintiffs.

- 6 -

1  in a diminution of market value of a home as well as a stigma loss under an insurance
2  policy." (Response at 5.) Although no previous Arizona case had dealt with whether
3  diminution of the market value of a home as well as stigma damages allegedly caused by
4  urine permeation are covered under an insurance policy, this case did not present a novel
5  legal question.

6  Essentially, the parties argued different interpretations of the insurance contract.
7  Plaintiffs contended that economic losses, such as diminution of market value and stigma
8  damages, were covered under the insurance policy. Defendants argued that such damages
9  were not recoverable. Basically, the parties had a policy coverage dispute. The case
10 certainly presented novel facts, but not necessarily novel legal theories. The Court finds this
11 case did not present a novel legal question merely because both parties were required to
12 spend considerable time and effort to support their interpretations due to the unusual factual
13 circumstances of this case. The Court therefore finds that the fifth *Associated Indemnity*
14 factor favors Defendants.

15 **6. Chilling effect**

16 In *Associated Indemnity*, 694 P.2d at 1184, the court stressed that courts should
17 consider "whether the award in any particular case would discourage other parties with
18 tenable claims or defenses from litigating or defending legitimate contract issues for fear of
19 incurring liability for substantial amounts of attorney's fees." Plaintiffs contend that such
20 a large award would have a chilling effect on future meritorious claims. Defendants counter:
21 "[t]hese sophisticated Plaintiffs ignored [the] well-known [risk of paying their opponent's
22 attorney's fees] with their unyielding insistence on a single, extraordinary raze-and-rebuild
23 method for satisfying their demands, and by stretching this litigation on for years despite
24 numerous efforts to resolve this matter short of trial." (Memorandum in Support at 7.)

25 The Court recognizes that any award of this magnitude could possibly chill future
26 plaintiffs from bringing meritorious claims; however, the particular circumstances of this
27 case must also be considered. Here, Plaintiffs brought breach of contract and bad faith
28 claims. Plaintiffs' breach of contract claim sought, at a minimum, $8,300,000 in damages.

Plaintiffs also sought punitive damages under their bad faith claim. Given the amount of damages sought by Plaintiffs, the Court cannot say that an award of the magnitude requested by Defendants would automatically deter future litigants presented with similar circumstances from litigating their claims.

Further, prior to trial, the Court specifically put each party on notice that they would likely be liable for a significant amount of attorney's fees in the event that judgment was entered against them. Yet, Plaintiffs proceeded to trial, knowing full well the possible consequences of their actions. The Court cannot find that a plaintiff that is fully informed of the consequences of proceeding with their action would be discouraged from litigating contract issues merely because of the prospect of a significant adverse fee award. It certainly did not dissuade Plaintiffs.

Lastly, given the unusual factual allegations asserted by Plaintiffs, it is unlikely that potential plaintiffs would look to this case in deciding whether to bring a suit. The Court therefore finds that the particular circumstances of this case weigh against a finding that an award would discourage other plaintiffs from litigating legitimate contract claims. But, given the sheer magnitude of the award requested, the Court finds that the sixth *Associated Indemnity* factor only marginally favors Defendants.

After considering the relevant *Associated Indemnity* factors, the Court finds that an award of attorney's fees under A.R.S. § 12-341.01 for Defendants' defense of the breach of contract and bad faith claims is appropriate.

**B. Amount of Award**

Finally, the Court must determine whether the fees requested are reasonable. When analyzing attorney's fees for reasonableness, the Court must determine that: (1) the hourly billing rate is reasonable; and (2) the hours expended on the case are reasonable. *See Schweiger v. China Doll Rest., Inc.*, 673 P.2d 927, 931-32 (Ariz. App. 1983).

In determining a reasonable hourly rate, "the rate charged by the lawyer to the client is the best indication of what is reasonable under the circumstances of the particular case." *Id.* The Court has reviewed the affidavits of Robert Sullivan and Gerald McMahon in

- 8 -

1 support of Defendant's Motion (Dkt. 838, Exs. A, B), and notes that Plaintiffs have not
2 objected to the hourly rates charged by Defendants' counsel.  The Court therefore finds that
3 the hourly rates charged are reasonable.

4       In analyzing the reasonableness of hours expended, the Court looks to the amount of
5 hours that would be expended by a "reasonable and prudent lawyer." *China Doll*, 673 P.2d
6 at 932.  Further, "[i]n order for the court to make a determination that the hours claimed are
7 justified, the fee application must be in sufficient detail to enable the court to assess the
8 reasonableness of the time incurred." *Id*.  An award may also be reduced for hours not
9 "reasonably expended."  As the United States Supreme Court explained in *Hensley v.*
10 *Eckerhart*, 461 U.S. 424 (1983),

> Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fees submission.

14 *Id*. at 434.

15       Plaintiffs have raised a number of objections to the reasonableness of the hours
16 claimed by Defendants.  Plaintiffs challenge Defendants' fee application because 19
17 attorneys (12 partners and 7 associates) worked on the case, which Plaintiffs claim
18 necessarily involves duplication of effort and inefficiencies.  Undoubtably, the more
19 timekeepers a firm has working on a case, the higher the likelihood of duplication of effort
20 and wasted time. More time will be spent bringing new timekeepers "up to speed;" and more
21 time will be needed to supervise and coordinate the large trial group.  On the other hand,
22 litigation of this magnitude, complexity, and challenge, demands the resources of a well-
23 staffed, well-financed, and well-organized group of experienced and sophisticated lawyers.
24 The Court cannot say whether Defendants needed 19 attorneys for this case, but the Court
25 will not criticize the number.[4]  The Court, however, will take into account specific

---

[4]Plaintiffs also contend that Defendants "loaded this case with partner-level attorneys." (Response at 13.)  However, for the reasons stated above, the Court will not

- 9 -

1   inefficiencies in its fee award.

2   Plaintiffs also claim that Defendants' entries lack sufficient detail to determine
3   reasonableness, and therefore should be deducted under LRCiv. 54.2.  In reviewing the fee
4   application, the Court notes that Defendants' counsel used an excellent billing system.
5   However, in some instances, Defendants' task descriptions lack the detail necessary for the
6   Court to determine reasonableness.[5]  Accordingly, the Court will reduce the award for entries
7   lacking sufficient detail to determine reasonableness under LRCiv. 54.2.

8   Plaintiffs further challenge Defendants' fee application because Defendants request
9   payment for 50% of their outbound travel time and 25% for inbound travel.  (Dkt. 843,
10  Affidavit of Erin McGuiness, p. 5.)  LRCiv. 54.2 provides that "[o]rdinarily air travel time
11  should not be charged.  If services were performed during such time, then describe such
12  services rather than charging for the travel time."  LRCiv. 54.2(e)(2)(D).  Accordingly, in
13  cases where Defendants described services performed during air travel time, the Court will
14  award fees for that time.[6]

15  Lastly, Plaintiffs contend that certain work performed by Defendants' paralegals
16  appears to be clerical work.  For example, the most common entry for Seltzer Caplan
17  McMahon Vitek paralegals is "review/categorize/analyze correspondence and/or documents
18  among parties counsel."  The Court does not agree that such work is necessarily clerical

---

20  criticize Defendants for how they staffed this case.

21  [5]A majority of the entries lacking sufficient detail are due to redactions made by
22  Defendants' counsel.  Defendants argue that such redactions are minimal and are permitted
    under the rules, and as such, should not be deducted from their award.  However, LRCiv.
23  54.2 provides: "counsel should be sensitive to matters giving rise to issues associated with
24  the attorney-client privilege and attorney work-product doctrine, but *must* nevertheless
    furnish an adequate nonprivileged description of the services in question." LRCiv. 54.2(e)(2)
25  (emphasis added).  Here, Defendants failed to provide an adequate nonprivileged description.

26  [6]Plaintiffs have not objected to the 50% outbound and 25% inbound formula requested
27  by Defendants.  The Court finds such a reduction to be reasonable under the circumstances
    and will award 50% of the fees incurred for outbound travel and 25% of the fees incurred for
28  inbound travel.

- 10 -

1  work, especially given the number of hours attributed to such tasks. However, the Court is
2  left with some descriptions that lacks sufficient detail to determine the specific task being
3  performed by Seltzer Caplan paralegals. As such, the Court will reduce the award for any
4  descriptions that lack sufficient detail to determine reasonableness under LRCiv. 54.2.

5  Having addressed Plaintiffs' specific objections, the Court now determines a
6  reasonable number of hours expended in this case.

**1. Broening Oberg Woods & Wilson ("BOWW")**

8  As an initial matter, the Court notes that effective November 1, 2005, BOWW
9  increased its hourly rate charged for attorneys and staff. For this reason, the Court will
10 review the first BOWW billing statement (August 17, 2005 to December 31, 2005) separate
11 from the remaining billing statements provided by Defendants' counsel.

12 Jane Foster billed 279.7 hours to this case from August 17, 2005 to December 31,
13 2005. 44.3 hours were billed at $70 per hour and 235.4 hours were billed at $80 per hour.
14 The Court finds the hours expended and the hourly rates reasonable. The Court therefore
15 awards $21,933 for work performed by Ms. Foster from August 17, 2005 to December 31,
16 2005.

17 Alicyn Freeman billed 18.9 hours to this case from August 17, 2005 to December 31,
18 2005. 4.2 hours were billed at $125 per hour ($525) and 14.7 hours were billed at $165 per
19 hour ($2425.50). Therefore, the total amount billed to Defendants should have been
20 $2950.50. However, BOWW only billed Defendants $2,780 for that time period. The Court
21 therefore will only award the amount actually billed to Defendants by BOWW. *See* A.R.S. §
22 12-341.01(B) ("The award of reasonable attorney fees pursuant to subsection A shall be
23 made to mitigate the burden of the expense of litigation to establish a just claim or defense.
24 It need not equal or relate to the attorneys fees actually paid or contracted, but the award may
25 not exceed the amount paid or agreed to be paid."). The Court finds that the amount charged
26 and hours expended are reasonable. Accordingly, the Court awards $2780 for work
27 performed by Ms. Freeman from August 17, 2005 to December 31, 2005.

28 Robert Sullivan billed 189.7 hours to this case from August 17, 2005 to December 31,

- 11 -

2005. 73.7 hours were billed at $125 per hour and 116.0 hours were billed at $165 per hour. The Court finds the hours expended and the hourly rates reasonable. The Court therefore awards $28,352.50 for work performed by Mr. Sullivan from August 17, 2005 to December 31, 2005.

James Broening billed 97.5 hours from August 17, 2005 to December 31, 2005. 38.0 hours were billed at $165 per hour ($6,270) and 59.5 hours were billed at $205 per hour ($12,197.50). Therefore, the total amount billed to Defendants should have been $18,467.50. However, BOWW only billed Defendants $18,399.50 for that time period. Therefore, the Court will only award the amount actually billed to Defendants by BOWW. *See* A.R.S. § 12-341.01(B). The Court will reduce the amount of hours requested by the following amount for lack of reasonable detail under LRCiv. 54.2: 2.0 hours at $165 per hour and 0.8 hours at $205 per hour. Accordingly, the Court awards $17,905.50 for work performed by Mr. Broening from August 17, 2005 to December 31, 2005.

BOWW paralegals billed 3,549.8 hours to this case after December 31, 2005. In reviewing the fee application, the Court will reduce the amount of hours requested by 2.6 hours[7] for lack of reasonable detail under LRCiv. 54.2 and 79.1 hours[8] for clerical work performed by BOWW paralegals. Accordingly, the Court awards 3,468.1 hours at $80 per hour. The Court therefore awards Defendants $277,448 in BOWW paralegal fees incurred after December 31, 2005.

BOWW associates billed 799.9 hours to this case after December 31, 2005. The Court will reduce the amount of hours requested by the following amounts for excessive/duplicative work: Alicyn Freeman - 12.8 hours; Alex Campbell - 12.0 hours; Tyler Abrahams - 7.9 hours. In addition, the Court will reduce the hours billed by Alex Campbell by 2.8 hours for lack of detail under LRCiv. 54.2. Accordingly, the Court awards 2.5 hours

---

[7] On 9/25/07, the task description for work performed merely contained the description "Jane Ann Foster."

[8] All 79.1 hours have been reduced from work performed by Jane Ann Foster.

- 12 -

at $125.00 per hour (Christopher Suffecool)[9] and 761.9 hours at $165.00 per hour. The Court therefore awards Defendants $126,026 in BOWW associate fees incurred after December 31, 2005.

BOWW partners and shareholders billed 5,104.6 hours to this case after December 31, 2005. The Court will reduce the amount of hours requested by the following amount for excessive/duplicative work: James Broening - 55.1; Robert Moore - 33.1 hours; Robert Sullivan - 69.6 hours. In addition, the Court will reduce the amount requested by the following amount for lack of reasonable detail under LRCiv 54.2: James Broening - 13.2 hours; Robert Moore - 9.1 hours; Robert Sullivan - 94.7 hours. Accordingly, the Court awards 3,635.7 hours at $180 per hour, and 1,194.1 hours at $205 per hour. The Court therefore awards $899,216.50 in BOWW partner and shareholder fees incurred after December 31, 2005.

That brings the total to $1,373,661.50. However, the fee award also must be reduced for air travel time improperly billed under LRCiv. 54.2(e)(2)(D) ($12,563.00), for fees incurred in drafting certain motions in limine which this Court required to be reduced from the fee application ($17,288.50), and for appeal related fees ($5,354.50). Defendants have also requested an additional $15,000 for fees reasonably anticipated to be incurred through final judgment. "The ultimate successful party is entitled to recover reasonable attorney's fees for all stages of the litigation . . . ." *Larkin v. State Ex. Rel. Rottas*, 857 P.2d 1271, 1283 (Ariz. App. 1992) (citing *Leo Eisenberg & Co., Inc. v. Payson*, 785 P.2d 49, 55 (Ariz. 1989)). The Court notes that Plaintiffs have not objected to this request, and finds the amount requested to be a reasonable approximation of the fees likely to be incurred. The Court, therefore, awards Defendants $15,000 for fees anticipated to be incurred through final judgment

---

[9]Mr. Suffecool's hourly rate during that time period should have been $165.00 per hour pursuant to the fee agreement. However, according to Defendants' counsel's billing records, Mr. Suffecool was billed out at a rate of $125.00 from September 1, 2006 to August 31, 2006.

- 13 -

1  Defendants total fee award for BOWW fees is $1,353,455.50.

2  **2. Seltzer Caplan McMahon Vitek ("SCMV")**

3  As an initial matter, the Court notes that until January 2008, SCMV's fee agreement
4  with Defendants provided for different billing rates for each attorney that worked on the case.
5  Additionally, the fee agreement provided for yearly rate increases. For these reasons, the
6  Court will review the SCMV fee request in reference to the attorneys that worked on this
7  case on a person by person basis.

8  SCMV billed for 1.0 hours of librarian research at $50 per hour. The Court finds the
9  hours expended and the hourly rate reasonable. The Court therefore awards $50 in librarian
10  research fees.

11  SCMV law clerks billed 3.3 hours at $150 per hour. The Court finds the hours
12  expended and the hourly rate reasonable. The Court therefore awards $495 in SCMV law
13  clerk fees.

14  SCMV paralegals billed 1,285.1 hours to this case.[10] The Court will reduce the
15  amount of hours requested by the following amount for lack of reasonable detail under
16  LRCiv. 54.2: Paralegals at $100 per hour - 155.6; Paralegals at $125 per hour - 9.2 hours;
17  Paralegals at $130 per hour - 195.1 hours; Paralegals at $135 per hour - 659.0 hours;
18  Paralegals at $140 per hour - 44.6 hours. Accordingly, the Court awards 79.7 hours at $100
19  per hour, 20.8 hours at $125 per hour, 110.9 hours at $130 per hour, and 10.2 hours at $140
20  per hour. The Court therefore awards $26,415.00 in SCMV paralegal fees.

21  Hope Chan and Daniel Eisman billed 6.8 hours and 31.5 hours, respectively, at $170
22  per hour. Rhonda Crandall billed 0.7 hours at $225 per hour. Kirsten Zittlan billed 2.3 hours
23  at $265 per hour. Elinor Meredith billed 0.5 hours at $300 per hour. The Court finds the
24  hours expended and the hourly rate reasonable. The Court therefore awards $7,428.

25  Gerald McMahon billed 241.5 hours to this case. The Court will reduce the amount

---

[10] SCMV's billing records did not denote which paralegal performed the task described in the bill until September 2007. As such, the Court will consider the award in terms of the hourly rate billed rather than in reference to the person that billed for the service.

- 14 -

1   of hours requested by 10.5 hours for lack of reasonable detail under LRCiv. 54.2. In
2   addition, the Court will reduce the amount requested by 46.2 hours for excessive/duplicative
3   work. Accordingly, the Court awards 14.0 hours at $475 per hour, 92.5 hours at $495 per
4   hour, 36.9 hours at $515 per hour, and 41.4 hours at $525 per hour. The Court therefore
5   awards $93,176.

6   Michael Nardi billed 132.8 hours to this case. The Court will reduce the amount of
7   the hours requested by 8.6 hours for lack of reasonable detail under LRCiv. 54.2. In
8   addition, the Court will reduce the amount requested by 2.5 hours for excessive/duplicative
9   work. Accordingly, the Court awards 115.9 hours at $360 per hour, 0.8 hours at $375 per
10  hour, and 5.0 hours at $475 per hour. The Court therefore awards $44,399.

11  James Delphey billed 196.4 hours to this case. The Court will reduce the amount of
12  hours requested by 16.8 hours for excessive/duplicative work. Accordingly, the Court
13  awards 159.7 hours at $435 per hour and 19.9 hours at $475 per hour. The Court therefore
14  awards $78,842.

15  Daniel Andrist billed 577.6 hours to this case. The Court will reduce the amount of
16  hours requested by 29.7 hours for excessive/duplicative work. Accordingly, the Court
17  awards 166.1 hours at $330 per hour, 306.5 hours at $350 per hour, and 75.3 hours at $475
18  per hour. The Court therefore award $197,855.50.

19  David Zubkoff billed 1,833.6 hours to this case. The Court will reduce the amount
20  of hours requested by 85.8 hours for lack of reasonable detail under LRCiv. 54.2. In
21  addition, the Court will reduce the amount requested by 81.3 hours for excessive/duplicative
22  work. Accordingly, the Court awards 1,089.8 hours at $330 per hour, 372.6 hours at $360
23  per hour, and 204.1 hours at $475 per hour. The Court therefore awards $590,717.50.

24  Robert Traylor billed 2,064.6 hours to this case. The Court will reduce the amount
25  of hours requested by 71.7 hours for lack of reasonable detail under LRCiv. 54.2. In
26  addition, the Court will reduce the amount requested by 90.8 hours for excessive/duplicative
27  work. Accordingly, the Court awards 731.4 hours at $290 per hour and 1,170.7 hours at
28  $360 per hour. The Court therefore awards $633,558.

1  That brings the total to $1,672,936. Again, the fee award must be reduced for air travel improperly billed ($47,323.13), for the motions in limine ($38,195.50), and for appeal related fees ($9,766.50). Defendants have also requested an additional $35,000 for fees reasonably anticipated to be incurred through final judgment. Since Plaintiffs have not objected and the Court finds the fee request reasonable (given the higher rates charged by SCMV), the Court awards Defendants $35,000 for fees anticipated to be incurred through final judgment. *See Larkin*, 857 P.2d at 1285.

Defendants total fee award for SCMV fees is $1,612,650.87. Plaintiffs therefore shall pay $2,966,106.37 in total attorneys' fees.

## III. SANCTIONS PURSUANT TO RULE 68 OF THE ARIZONA RULES OF CIVIL PROCEDURE

Defendants contend that Rule 68 of the Arizona Rules of Civil Procedure ("Arizona Rule 68") mandates sanctions against Plaintiffs.[11] Specifically, Defendants argue that Rule 68 of the Federal Rules of Civil Procedure ("Federal Rule 68") does not apply to cases in which the defendant obtains judgment, and under Ninth Circuit authority, in those circumstances, state law governs – notwithstanding Federal Rule 68. (Motion at 5) (citing *MRO Communications, Inc. v. AT & T Corp.*, 197 F.3d 1276, 1280 (9th Cir. 1999)). However, Defendants give *MRO Communications* too expansive a reading.

In *MRO Communications*, the Ninth Circuit Court of Appeals upheld an award of attorneys' fees under Nevada law.[12] *MRO Communications*, 197 F.3d 1276. The Court of

---

[11]Arizona Rule 68 differs significantly from Federal Rule 68. While Federal Rule 68 allows the offeror to recover its post-offer costs, Arizona Rule 68 does not provide for the recovery of costs. *Compare* Fed.R.Civ.P. 68 *with* Ariz.R.Civ.P. 68. Rather, Arizona Rule 68 sanctions an offeree that rejects an offer that is more favorable than the judgment received. *See* Ariz.R.Civ.P. 68(g). Under Arizona Rule 68, the offeree is required to pay the expert witness fees and double the taxable costs incurred after the offer of judgment, and prejudgment interest on unliquidated claims accruing from the date of the offer. *See id.*

[12]Nevada law provides that a defendant shall be awarded reasonable attorneys' fees incurred from the time of an offer of judgment if the plaintiff rejects it and fails to receive a more favorable result. *See* Nev.Rev.Stat. § 17.115; *see also* Nev.R.Civ.P. 68.

- 16 -

Appeals noted that Federal Rule 68 does not apply to cases where the defendant obtains judgment. It therefore analyzed whether the defendant was entitled to recover attorney's fees under Rule 54 of the Federal Rules of Civil Procedure.[13] *Id.* at 1280. Indeed, the Court of Appeals focuses its entire discussion on the availability of attorney's fees in diversity actions. In affirming the award, the Court of Appeals relied on Nev.Rev.Stat. § 17.115 and Nev.R.Civ.P. 68 as *the statute, rule or other grounds* required to permit a party to recover attorneys' fees under Fed.R.Civ.P. 54(d)(2). *Id.* at 1281-82. The Court of Appeals, however, did not hold that Nev.R.Civ.P. 68 was to be applied in federal court where the defendant obtains judgment;[14] it just happened to be the rule that provided the grounds for recovering attorneys' fees under Nevada law. The Court therefore finds that *MRO Communications* is distinguishable because attorney's fees are available under A.R.S. § 12-341.01. The equitable concerns at issue in *MRO Communication* are not present here.

The Court will apply Federal Rule 68 to this case, not Arizona Rule 68. The Court's

---

[13]Rule 54 of the Federal Rules of Civil Procedure provides in pertinent part:

> Claims for attorneys' fees and related nontaxable expenses shall be made by motion . . . . Unless otherwise provided by statute or order of the court, the motion must be filed and served no later than 14 days after the entry of judgment; must specify the judgment, and *the statute, rule or other grounds entitling the moving party to the award*; and must state the amount or provide a fair estimate of the amount sought.

Fed.R.Civ.P. 54(d)(2) (emphasis added).

[14]In fact, the Court of Appeals analysis indicates that the state counterpart to Federal Rule 68 does not apply in federal cases even where the defendant obtains judgment. In determining whether to permit the defendant to recover attorneys' fees under Nev.R.Civ.P. 68, the Court determined that the procedural requirements of Nev.R.Civ.P. 68, such as requiring a party to specify the statute or rule which allows for the recovery of fees or costs to be cited in an offer of judgment, were not applicable in federal court. *See MRO Communications*, 197 F.3d at 1282. The Court of Appeals stated that the "[t]he only procedure for notifying a plaintiff of an offer of judgment in federal court is set forth in Federal Rule 68." *Id.*

- 17 -

1  jurisdiction in this case is based on diversity of citizenship. In such cases, the Court applies
2  state substantive law, and federal procedural law. *See Erie*, 304 U.S. 64 (1938). Arizona
3  Rule 68 is procedural, rather than substantive. *See Pima County v. Hogan*, 3 P.3d 1058,
4  1060-61 (Ariz. App. 1999), *overruled on other grounds by Salt River Project Agr. Imp. and*
5  *Power Dist. v. Miller Park, LLC*, 183 P.3d 497, 503 (Ariz. 2008); *see also Pima County*, 3
6  P.3d at 1062 (Howard, J., dissenting) ("[Arizona Rule 68] is a procedural device and its
7  purpose is to encourage settlement of actions filed in superior court . . . ."). As such, the
8  Court finds that Arizona Rule 68 is not applicable and Defendants are not entitled to
9  sanctions under Arizona Rule 68.[15]

## IV. CONCLUSION

The Court finds that an award of attorneys' fees for Defendants' defense of Plaintiffs' breach of contract and bad faith claims is appropriate under A.R.S. § 12-341.01. But because Arizona Rule 68 is a procedural rule inapplicable in federal court, the Court will not award sanctions.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Attorneys' Fees and Related Non-Taxable Expenses Including an Award of Sanctions Pursuant to Rule 68 of Arizona Rules of Civil Procedure (Dkt. #783) is **GRANTED IN PART** and **DENIED IN PART**. Defendants' request for an award of attorneys' fees for their defense of the breach of contract and bad faith is **GRANTED**. Defendants are awarded attorneys' fees in the following amount: BOWW fees - $1,353,455.50; SCMV fees - $1,612,650.87. Defendants' total fee award is $2,966,106.37.

**IT IS FURTHER ORDERED** that Defendants' request for an award of sanctions

---

[15] The Court also notes that this matter was removed from state court to this Court. Yet, despite removing the action to federal court, Defendants are requesting that this Court impose sanctions under Arizona Rule 68. Defendants had their chance to avail themselves of the procedural safeguards available under the Arizona Rules of Civil Procedure and chose to remove the matter to federal court. The Court believes that it would be unjust to permit Defendants to recover sanctions under Arizona Rule 68 after removing the action from state court.

- 18 -

1  pursuant to Rule 68 of the Arizona Rules of Civil Procedure is **DENIED**.

2  **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment on
3  this Order.

4  DATED this 13th day of May, 2009.

```
                    _____
                         James A. Teilborg
                         United States District Judge
```